UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 3:12-CR-36 JD |
| | ) | |
| ROBERT L. TROUP | ) | |

**<u>OPINION AND ORDER</u>**

Robert Troup is charged with several child pornography offenses related to his alleged videotaping, via remote device, of male students using a swim team locker room at Penn High School. On May 10, 2012, the government filed a motion for a protective order regarding child witnesses and victims who will be referred to frequently and who will possibly testify during trial. [DE 30]. The government requested three forms of relief: (1) that the child victims and child witnesses be referred to by pseudonyms of John Doe 1; John Doe 2; etc. in all court filings, pleadings, *etc.*; (2) that the courtroom be sealed during the testimony of one child victim/witness, as well as two non-victim child witnesses; and (3) that the images of child pornography at issue in this case are displayed in such a manner as to be visible only to the jury and not to the public in the gallery.

The Court held a first hearing on the government's motion on June 7, 2012, and held a second hearing on June 27, 2012. [DE 35; DE 39]. At the first hearing, two new issues were raised. First, the defendant orally moved that the images of his own nude body which will be displayed during the course of trial be made viewable only to the jury and trial participants, and not to the public in the gallery. Second, the Court expressed some concern as to how jury selection should be handled, given the requested use of pseudonyms for several of the important players in the case. This

1

Court's practice is to read a list of witnesses and key figures to the venire during voir dire, so that any personal relationship a juror may have with one of those figures can be disclosed. Obviously, reading a list full of "John Does" would not ferret out potential conflicts in quite the same way.

At the second hearing, the Court heard additional argument, received some additional evidence in affidavit form, and took the parties' positions with respect to each issue raised. The defense does not object to the use of pseudonyms for child witnesses or victims, generally, and does not object to the closure of the courtroom during the one child victim/witness's testimony. The defense also does not object to the Court managing the publication of exhibits to the jury in such a way as to prevent showing potential child pornography to the gallery. The defense does object, however, to the closure of the courtroom during the testimony of the two *non*-victim child witnesses (although pseudonyms are unobjectionable). The defense also maintains that real names should be used during voir dire, if possible, so as to avoid discovering any surprise juror conflicts during trial. The government, in turn, does not object to the defense request that nude images of the defendant be published to the jury in the same limited fashion as images of the child victims, but does argue that pseudonyms should be used consistently throughout all trial matters, including voir dire. All issues were briefed in full, and the Court resolves them, preliminarily, as follows.

## DISCUSSION

Most of the issues raised amount, in some respect, to requests for full or partial closures of the proceedings. There are two potential constitutional bases for challenging any such closure. First, the defendant has a Sixth Amendment right to a public trial. *See* U.S. CONST. Amend. VI. In effect, the Sixth Amendment's guarantee confers on criminal defendants the right to be tried in a courtroom whose doors are open to any members of the public inclined to observe the trial. *See Bowden v.*

*Keane*, 237 F.3d 125 (2d Cir. 2001). Second, the public itself has a right to attend criminal trials, implicit in the guarantees of the First Amendment. *Presley v. Georgia*, 130 S.Ct. 721, 723 (2010); *Press-Enterprise Co. v. Superior Court of Cal. Riverside Cty.*, 464 U.S. 501 (1984); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 (1980).

It is easy enough for the defendant to detect any possible threat to *his* right to a public trial; he is a participant in each stage of the proceedings. But it is just as easy to imagine circumstances under which the *public* right might be lost without warning, such as where a party attempts to move for closure under seal, or where an oral motion is decided at the same hearing in which it is raised. As a result, "[t]he courts of appeals that have addressed the question of whether notice and an opportunity to be heard must be given before closure of a proceeding or sealing of documents to which there is a First Amendment right of access, have uniformly required adherence to such procedural safeguards." *In re Hearst Newspapers, LLC*, 641 F.3d 168, 182 (5th Cir. 2011) (collecting cases[1]). Generally, a motion for closure should be docketed publically and reasonably

---

[1] The Fifth Circuit Court of Appeals gathered an impressive string of citations, including the following: *United States v. Alcantara*, 396 F.3d 189, 200 (2d Cir. 2005) ("[A] motion for courtroom closure should be docketed in the public docket files.... Entries on the docket should be made promptly, normally on the day the pertinent event occurs.... We think this type of general public notice suffices to afford an adequate opportunity for challenge to courtroom closure." (quoting *In re Herald Co.*, 734 F.2d at 102–03)); *Phoenix Newspapers, Inc. v. U.S. Dist. Ct.*, 156 F.3d 940, 949 (9th Cir.1998) ("[I]f a court contemplates sealing a document or transcript, it must provide sufficient notice to the public and press to afford them the opportunity to object or offer alternatives. If objections are made, a hearing on the objections must be held as soon as possible."); *Oregonian Publ'g Co. V. U.S. Dist. Ct. for Dist. of Oregon*, 920 F.2d 1462, 1466 (9th Cir.1990) (affirming previous holding that "those excluded from the proceeding must be afforded a reasonable opportunity to state their objections" (citing *United States v. Brooklier*, 685 F.2d 1162, 1167–68 (9th Cir. 1982); *In re Washington Post Co.*, 807 F.2d 383, 390–91 (4th Cir. 1986)); *United States v. Valenti*, 987 F.2d 708, 713 (11th Cir.1993) (explaining that giving "notice and an opportunity to be heard on a proposed closure" is required prior to closing a "historically open process where public access plays a significant role"); *Washington Post v. Robinson*, 935 F.2d 282, 289 (D.C. Cir. 1991) (explaining that before a plea agreement is sealed, "(1) [t]he government must file a written motion to seal the plea agreement and notice of that motion must be entered in the public docket; [and] (2) [t]he trial court must promptly allow interested persons an opportunity to be heard before ruling on the motion and entering the sealing order"); *In re Washington Post Co.*, 807 F.2d at 390 (holding that before making specific findings in conjunction with an order to close a proceeding or seal documents, the district court must docket closure motions "'reasonably in advance of their disposition'" in order to give the press and public notice and then "provide interested persons 'an opportunity to object to the request before the court ma[kes] its decision'" (quoting *In re Knight Publ'g Co.*, 743 F.2d 231, 234–35 (4th Cir. 1984))); *United*

in advance of any hearing or other disposition – far enough in advance, at least, to give the public a meaningful opportunity to intervene. *See United States v. Alcantara*, 396 F.3d 189, 200 (2d Cir. 2005); *In re Washington Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986). Those requirements are easily met, here. The government's motion was publically docketed on May 10, 2012. Several briefs, two open court hearings, and over three months later, the Court is confident that any member of the press or public who harbored an objection to the issues under deliberation has had a fair opportunity to air his grievance. None have come forward, and the Court thus feels comfortable moving forward to a preliminary determination of the issues.

### Pseudonym Request and Use of Names During Voir Dire

The government's first request is that all minor victims and witnesses in the case be referred to only by pseudonyms in court filings and during all trial stages, including voir dire. The pseudonym request comes pursuant to 18 U.S.C. § 3509(d)(3), a portion of the Victims' Protection and Rights Act (the "Act"):

> On motion by any person the court may issue an order protecting a child from public disclosure of the name of or any other information concerning the child in the course of the proceedings, if the court determines that there is a significant possibility that such disclosure would be detrimental to the child.

18 U.S.C. § 3509(d)(3)(A). The government has represented that the jury trial in this case will involve the testimony of one child victim/witness and two non-victim child witnesses, as well as references to as many as 42 non-witness child victims. [DE 30 at 1]. It is easy to see how the disclosure of a child's name as the victim of a sex offense can be "detrimental to the child," and the

---

*States v. Criden*, 675 F.2d 550, 559–60 (3d Cir. 1982) (holding that in order to provide notice, "[t]he district courts should take whatever steps are necessary to ensure that the docket entries are made a reasonable time before the closure motion is acted upon" and explaining that doing so would allow "the public and press ... to take timely action if they wished").

same goes for the two child witnesses who were not victims. The factual nature of this case makes it likely, even probable, that the children involved will be subject to harassment by their peers if their names are publicly associated with the case, and the government has introduced evidence showing that such reprehensible behavior has already occurred. The defense has no objection to the use of pseudonyms, and the Court will order it. The method submitted by the government is acceptable: as soon as practicable, the government should file, under seal, a list with the real names of the minors expected to be involved in the trial as well as their corresponding pseudonyms of John Doe 1; John Doe 2; etc. Thereafter, any filings concerning the minors should comply with the redaction requirements set out in Federal Rule of Criminal Procedure 49.1(a), although pseudonyms will be used instead of initials. Trial testimony, exhibits, etc., should also adhere to the pseudonym requirement.

There is one exception, however, to the blanket use of pseudonyms. Safeguarding the integrity of the judicial process – which includes guaranteeing a jury free of personal biases or conflicts of interest – is a matter of paramount concern to the Court. It is difficult to see how to properly screen the venire without, at some point, disclosing the full names of potential players in the case to the jury pool. The government has suggested a sort of narrowing process, whereby the venire would be asked, for example, if any person is familiar with a child who attends Penn High School. Those who answered in the affirmative would then be asked to describe the child, if the child is involved with the swimming program, etc., in an attempt to determine whether the venire member's acquaintance might be one of the children involved with the case without ever actually using the child's name. This is too risky. A venire member may be familiar with a child by name without being familiar with the nature and extent of that child's extracurricular activities.

Neighborhood or casual family relationships could too easily slip through the cracks. The First Circuit Court of Appeals has suggested that, under these circumstances, a proper balance between the defendant's rights and those of the juvenile witnesses requires the disclosure of the full names of the juvenile witnesses to the jury pool during impanelment, *see United States v. Anderson*, 139 F.3d 291, 302 (1st Cir. 1998), and this Court agrees. Disclosing the names of the minors among a list of other witnesses and significant persons will create, at most, a very low risk that some enterprising prospective juror might deduce which pseudonym corresponds to which name, especially given the sheer number of John Does the government indicates will be discussed. Moreover, the list will be read out of context, without drawing any connections to detrimental information. Disclosure of the names of child witnesses to the venire thus will not be detrimental. The Court's decision is subject to change if circumstances require it, but the prospective ruling is that the minors' real names will be read to the jury pool. At all other times, and in all other pleadings, pseudonyms will be mandatory.

## Closure of the Courtroom

The government's second request is that, in addition to the use of pseudonyms, the courtroom be closed during the testimony of both the one child victim/witness and the two non-victim child witnesses. The parties agree that the closure request is governed by 18 U.S.C. § 3509(e):

> When a child testifies the court may order the exclusion from the courtroom of all persons, including members of the press, who do not have a direct interest in the case. Such an order may be made *if the court determines on the record that requiring the child to testify in open court would cause substantial psychological harm to the child or would result in the child's inability to effectively communicate*. Such an order shall be narrowly tailored to serve the Government's specific compelling interest.

6

(emphasis added). As the italicized language shows, the standard from § 3509(e) is more stringent and more specific than the standard from § 3509(d)(3)(A). No case has specifically defined what constitutes "substantial psychological harm," but before the statute was enacted, the Supreme Court suggested that a district court should consider "the minor victim's age, psychological maturity and understanding, the nature of the crime, the desires of the victim, and the interests of parents and relatives" when determining whether to close the courtroom. *Globe Newspaper Co. v. Superior Court for Norfolk County*, 457 U.S. 596, 608 (1982). The Supreme Court had placed the burden upon the party seeking closure to demonstrate two things: (1) an overriding interest likely to be prejudiced by an open courtroom – which, in this case, is set out by statute – and (2) that the closure sought is no broader than is necessary to protect that interest. *See Waller v. Georgia*, 467 U.S. 39, 48 (1984); *Judd v. Haley*, 250 F.3d 1308, 1317 (11th Cir. 2001). The Seventh Circuit has expanded on *Waller*, adding two additional prongs: (3) alternatives to closure must be considered by the trial court; and (4) the court must make findings sufficient to support the closure. *Walton v. Briley*, 361 F.3d 431, 433 (7th Cir. 2004) (citing *Waller*, 467 U.S. at 48). While these factors and tests were formed outside of the Victims' Protection and Rights Act context, they were designed to alleviate any constitutional concerns a closure might raise, and the Court considers them relevant, though not dispositive.

The government has discharged its burden with respect to the one child victim/witness. The government has represented that the victim/witness was captured by the recording device under circumstances which likely constitute child pornography. Requiring one of the minor victims of this offense to testify in open court, perhaps in conjunction with the display of child pornography depicting that victim, and particularly in a case which has received significant publicity in the

7

community, would "cause substantial psychological harm to the child or would result in the child's inability to effectively communicate." The minor would be forced to relive, or to confirm, his victimization and the egregious violation of his privacy to members of the public, and potentially to members of the press who would disseminate that information to a readership that doubtless includes the minor's peers. The defense does not object to closure during this witness's testimony, and no less restrictive alternative – such as remote testimony, etc., – would adequately protect the victim's privacy unless that measure, too, involved the exclusion of the public. The courtroom will be closed to the public during the minor victim/witness's testimony, with the exception of the testifying witness's parents.

The government has not discharged its burden with respect to the non-victim child witnesses, although it is a close question. At the outset, the Court notes that the fact that the witnesses are not victims is not dispositive.[2] The government introduced evidence – through affidavits signed by the witnesses' parents – that the witnesses and other members of the swim team were harassed at school as a result of their association with the case. The affidavits also included statements from the witnesses and their parents that, by virtue of their association with the case, the witnesses fear they will be teased again when the case goes to trial. Those observations are necessarily speculative, but the rules of evidence are relaxed during pretrial proceedings such as this one. *See* Federal Rule of Evidence 104(a). Thus, both common sense and the evidence introduced by the government suggest

---

[2] By its terms, § 3509(e) applies "when a child testifies[;]" there is no requirement in the text that the child be a victim. To the contrary, the Act defines "child" to mean "a person who is under the age of 18, who is or is alleged to be (A) a victim of a crime of physical abuse, sexual abuse, or exploitation; or (B) a witness to a crime committed against another person[.]" 18 U.S.C. § 3509(a)(2). Non-victim minor witnesses clearly fall within the statute's coverage.

8

that testimony in open Court in this case, even for a child witness who was not directly victimized but who was nonetheless involved, could create at least *some* risk of psychological harm at the hands of the witnesses' thoughtless peers. But the question is whether testimony in open court will cause *substantial* psychological harm. The defendant objects to the closure, and the Court has an independent duty to protect the public's right of access. A careful application of the legal standard to the facts is necessary.

The government has argued only substantial psychological harm; no evidence has been presented to the Court suggesting that an open courtroom will result in "the child's inability to effectively communicate." 18 U.S.C. § 3509(e). Applying the *Globe Newspaper* factors to assess the severity of the threat to the children's psychological well-being, the Court concedes that "the desires of the [witness], and the interests of the parents and relatives" weigh in favor of closure. 457 U.S. at 608. But the minors' age and "psychological maturity and understanding" weigh against it. *Id*. The two witnesses in question are quite close to the age of majority. True, in the legal sense a minor is a minor, but minors closer to the age of majority are often more psychologically mature than those of "tender years," and better able to deal with the sort of social difficulties the government indicates these minors will potentially face. The final factor, the nature of the crime, is a close call. Certainly, the alleged crime – surreptitiously filming high school students in the nude in their locker room – is a deplorable one, and of a sort where the victims clearly do not benefit by their public association with it. But these witnesses are not victims. They discovered the recording device in the locker room and secured the memory card containing the depictions, but they were not captured by it in a compromising or pornographic way. In a sense, their discovery of the device conveys little more information about them than the fact that they were members of the swim team.

The government hints that the witnesses might endure some additional degree of scrutiny from their peers given the circumstances surrounding their involvement. But that concern seems speculative and undeveloped.

Taking all of that into consideration, the Court is not convinced that the government has shown that "substantial psychological harm" would result from the witnesses' testimony in open court. The witnesses' classmates may indeed harass them again for their association with the case once the case returns to the public eye, and that is regrettable. But it is difficult to see how a closure would prevent that from occurring. According to the affidavits, classmates already know who was associated with the facts surrounding this case. Courtroom closure will not somehow retroactively prevent that discovery. In other words, what harassment might occur will not be *caused* by the open-court testimony; it will be caused by the witnesses' classmates prior knowledge of the case and their accompanying lack of sensitivity. The Court has already ordered the use of pseudonyms to protect the identity of each minor involved in the case; to take the additional step of closing the courtroom where the government has not specifically shown how psychological harm would result from anonymous open court testimony – as opposed to from the witnesses' mere association with the case – would be to strike an inappropriate balance between the rights of the witnesses and the rights of the defendant and the public to an open trial. The Court will maintain an open courtroom during the testimony of the non-victim minor witnesses.

The Court notes once again that these rulings may change if the circumstances require it. Barring any change in circumstances, however, the courtroom will be closed during the testimony of the minor victim/witness (with the exception of that witness's parents), but will be open during testimony by the non-victim minor witnesses.

### Display of Potentially Pornographic Images

The government's third request is that the Court arrange the courtroom so that the alleged child pornography in this case is displayed on monitors visible only to the jury and trial participants, and not to the gallery. The defendant has mirrored the request, asking that pornographic images of his own body be displayed in a similarly limited fashion. Neither party objects to the other's request. That leaves only the interest of the public to be considered.

The public does hold a common-law right of access to documents filed in connection with criminal proceedings, which generally extends to photographic evidence. *See In re Associated Press*, 172 Fed. Appx. 1, 3 (4th Cir. 2006) (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598-99 (1978)). But the decision whether, when, and how to allow such access "is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599. "Every court has supervisory power over its own records and files, and access [may be] denied where court files might . . . become a vehicle for improper purposes." *Id*. at 598. Furthermore, 18 U.S.C. § 3509(d)(3)(B)(ii) provides that a protective order issued to prevent disclosures detrimental to a child may also "provide for any other measures that may be necessary to protect the privacy of the child." With respect to any potential child pornography which might be displayed during trial, this is just such a case. There is no particularly compelling reason why the public would need to see child pornography in the gallery during trial, and it would be detrimental to the minors depicted therein to put their victimization on display.

The analysis is slightly different with respect to the images of the defendant himself. Obviously, § 3509(d)(3)(B)(ii) does not apply. In the absence of statutory authority, and to the extent

that the request can be considered a partial closure of the courtroom, the generalized factors from *Waller* and *Walton* control. There is certainly an interest – both a governmental and a defense interest – in refraining from displaying pornographic images of any kind to the public in the gallery, and the partial closure requested is narrowly tailored to suit that interest. So narrowly tailored, in fact, that it *is* the least restrictive alternative: the public will be allowed to remain in the courtroom; the testimony of the witnesses authenticating the evidence will be audible and uncensored; etc. The extent of the partial closure is that the images themselves will be kept to the jury. The Court has no problem with treating pornographic images of the defendant in the same way as potential child pornography images in the absence of an objection from the government, and will arrange for their display to be limited to the jury and trial participants.

## CONCLUSION

For the reasons stated herein, the pending pretrial issues are preliminarily resolved as follows:

(1) Pseudonyms are to be used at all times with respect to all minors involved in the case, and documents containing those minors' information are to be redacted consistent with Fed. R. Crim. P. 49.1(a). The only exception is voir dire, when the full names of the minor witnesses will be disclosed to the jury pool, without any accompanying detrimental information, in order to determine whether any conflicts exist.

(2) The courtroom will be closed during the testimony of the minor victim/witness, but will remain open during the testimony of the two non-victim minor witnesses.

(3) Potentially pornographic images – of both the victims and the defendant – will be displayed in such a way as to be visible to the jury and trial participants but not to the public in the gallery.

These preliminary rulings are subject to change if the circumstances require it. Of particular note, any member of the press or public who is aggrieved by the partial closures contemplated herein may challenge that closure at any time prior to trial.

SO ORDERED.

ENTERED: August 31, 2012

                                      /s/ JON E. DEGUILIO
                                      Judge
                                      United States District Court